UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

Sandra Ann Read,                                    Case No. 8:09-bk-25809-MGW
                                                    Chapter 11
      Debtor.
_____/

**MEMORANDUM OPINION ON**
**TIMELINESS OF REQUEST FOR DETERMINATION OF**
**AD VALOREM TAX CLAIMS UNDER BANKRUPTCY CODE § 505**

      The issue before the Court is whether the Debtor's request for determination of ad valorem tax liabilities under Bankruptcy Code section 505 was timely filed. The request was filed after the time period for contesting the tax liability under state law had expired. However, because this time period had not expired as of the date of the bankruptcy petition, the Court concludes that pursuant to Bankruptcy Code section 108(a) the time period to make such a request has been extended by operation of law. Accordingly, the Debtor's request under section 505 is timely.

Factual and Procedural Background

      The Tax Collector has filed a claim for ad valorem taxes owed with respect to approximately twenty investment properties owned by the Debtor ("Tax Claims"). The Debtor has objected to the Tax Claims on the basis that "the assessed value of each respective property exceeds the actual value" as of the date of assessment.[1]

      The Tax Claims are for the year 2009. Under Florida law, liens for unpaid ad valorem taxes become fixed on January 1 of the year for which the taxes are owing.[2] The applicable

---

[1] Debtor's Objection to Claim No. 43 of Pinellas County Tax Collector ("Objection") (Doc. No. 192 ¶ 4).
[2] Fla. Stat. §§ 192.042, 192.053, and 197.122 (2008).

Florida statutes provide that the time to challenge the assessment values for ad valorem taxes expires 60 days after certification of the tax roll.[3] The tax roll that gave rise to the Tax Claims in this case was certified for collection to the Tax Collector by the Property Appraiser on October 12, 2009.[4] Accordingly, under state law, the time to challenge the assessment values for the Debtor's 2009 ad valorem taxes expired on December 11, 2009.

The Debtor filed her voluntary petition under chapter 11 of the Bankruptcy Code on November 10, 2009. Thus, this case was filed within the time period to challenge the assessment values for the Debtor's 2009 ad valorem taxes. However, the Debtor first objected to the Tax Claims on April 21, 2010, more than four months past the time to challenge the assessment values under state law.[5] The Objection was filed pursuant to Bankruptcy Code section 502. In the Objection, the Debtor contends that the assessment values exceed the actual values.[6]

The Debtor subsequently amended the Objection on July 2, 2010, to invoke Bankruptcy Code section 505 as a basis for this Court to make a determination of the tax liability as set forth in the Tax Claims.[7] The Amended Objection also joined the Pinellas County Property Appraiser as a necessary party for proper determination of the Tax Claims. In addition, the Amended Objection also references Bankruptcy Code section 108(a) for the proposition that the applicable period for contesting the amount of the Tax Claims was extended upon the filing of the bankruptcy case for up to two years after the order for relief.

---

[3] Fla. Stat. § 194.171(2) (2009).

[4] Response to Debtor's Objection to Claim No. 43 and Request for a Hearing by Pinellas County Tax Collector (Doc. No. 243, attach. 243-1 and 243-2).

[5] Objection, *supra* note 1.

[6] *Id.* ¶ 4.

[7] Debtor's Amended Objection to Claim No. 43 of Pinellas County Tax Collector and Pinellas County Property Appraiser ("Amended Objection") (Doc. No. 394).

Conclusions of Law

The Court has jurisdiction to determine the Amended Objection pursuant to 28 U.S.C. § 1334(b), 11 U.S.C. § 502, and 11 U.S.C. § 505. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) and (K).

If this case were viewed solely from the perspective of Bankruptcy Code section 108, there would be no question that the time period to challenge the tax valuation, having not expired as of the date of the petition, was extended for two years from the order for relief. In this respect, Bankruptcy Code section 108(a) provides that if applicable nonbankruptcy law fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the debtor in possession may commence such action before the later of the end of such period or two years after the order for relief.[8]

In this case, the Debtor had a right under state law to contest the tax assessment within 60 days after certification of the tax roll.[9] Absent her bankruptcy filing, she would have had to file an action in the circuit court in Pinellas County, where the property is located, because that court has original jurisdiction over all matters relating to Pinellas County property taxation.[10] However, because the sixty-day deadline had not expired before the date of the bankruptcy petition, the time period to commence such action was extended for two years by operation of Bankruptcy Code section 108.[11]

While Bankruptcy Code section 108 deals generally with extensions of time to initiate certain types of proceedings that might otherwise expire after the filing of bankruptcy, it is Bankruptcy Code section 505 that deals specifically with this Court's jurisdiction to make a

---

[8] 11 U.S.C. § 108(a).
[9] Fla. Stat. § 194.171(2).
[10] Fla. Stat. § 194.171(1). *See also In re CGE Shattuck, LLC*, 272 B.R. 514, 518-19 (Bankr. D.N.H. 2001).
[11] 11 U.S.C. § 108(a).

determination of tax liability. In this respect, section 505 provides a broad grant of jurisdiction to bankruptcy courts to determine the amount of any tax.[12]

> The legislative statements accompanying section 505 make clear that the section "authorizes the bankruptcy court to rule on the merits of any tax claim involving an unpaid tax, fine, or penalty relating to a tax, or any addition to a tax, of the debtor or the estate."[13]

The only limitations to a bankruptcy court's jurisdiction to consider tax issues involving the debtor or the estate are the bankruptcy court's discretion to abstain and the express statutory limitations contained within section 505(a)(2).[14] It is upon these express statutory limitations that this case must be decided.

Section 505(a)(2) contains three statutory limitations to a bankruptcy court's power to determine tax liabilities. The first of these is contained in section 505(a)(2)(A) and provides that a bankruptcy court may not determine the amount or legality of a tax if such amount or legality was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the bankruptcy case.[15] This exception to the bankruptcy court's jurisdiction to adjudicate a tax assessment was first included in the Bankruptcy Act of 1898 and was carried over in the Bankruptcy Code when it was enacted in 1978.[16] In effect, this provision simply codifies both Supreme Court precedent and principles of res judicata to prevent a debtor from having two opportunities to contest the amount or legality of tax liability where either has been fully adjudicated by a judicial or administrative tribunal of

---

[12] 11 U.S.C. § 505(a)(1); *IRS v. Luongo (In re Luongo),* 259 F.3d 323, 328 (5th Cir. 2001).

[13] *Luongo*, 259 F.3d at 328 (citing 124 Cong. Rec. H. 11110 (daily ed. Sept. 28, 1978) (remarks of Rep. Edwards introducing the House amendment)).

[14] *Id.* at 329-30 (citing *In re Hunt*, 95 B.R. 442, 445 (Bankr. N.D. Tex. 1989)).

[15] 11 U.S.C. § 505(a)(2)(A).

[16] Section 64(a)(4)(pre-1966) and section 2a(2A) (enacted in 1966) of the Bankruptcy Act of 1898.

competent jurisdiction before the commencement of the case.[17] This exception does not apply in this case because neither the amount nor legality of the Tax Claims was ever contested or adjudicated before any tribunal prior to the filing of this case.

The second statutory exception to the bankruptcy court's broad jurisdiction to determine tax claims concerns the right of the estate to a tax refund and has no applicability to this case.[18] However, the third exception forms the basis for the Tax Collector's and the Property Appraiser's assertions that the Debtor has failed to timely avail herself of the administrative processes of state law or invoke the jurisdiction of the state courts under Florida law, and by operation of section 505(a)(2)(C), cannot now invoke the jurisdiction of this Court for the purpose of contesting or redetermining the Property Appraiser's assessment values that form the basis for the Tax Claims.[19] This provision provides as follows:

> The court may not so determine . . . the amount or legality of any amount [of tax] arising in connection with an ad valorem tax on real or personal property of the estate, if the applicable period for contesting or redetermining that amount under any law (other than a bankruptcy law) has expired.[20]

While this provision, when read in isolation, appears to be fairly straightforward, the parties in this case both offer supportable yet inconsistent interpretations as to how this provision should be read. The Debtor argues that because the time under applicable nonbankruptcy law for the debtor to commence an action to contest the assessment had not expired before the date of filing the petition, Bankruptcy Code section 108 extended for two years after the bankruptcy

---

[17] *Ark. Corp. Comm'n v. Thompson,* 313 U.S. 132, 143 (1941) ("Nothing in this language indicates that taxpayers in bankruptcy or reorganization are intended to have the extraordinary privilege of two separate trials, one state and one federal, on an identical issue of controverted fact-[i.e.,] the value of the property taxed."); 4 *Collier on Bankruptcy*, ¶ 505.LH[3][a] at 505-12.

[18] 11 U.S.C. § 505(a)(2)(B).

[19] Response to Debtor's Amended Objection to Claim No. 43 and Request for a Hearing by Pinellas County Property Appraiser (Doc. No. 429 ¶ 5); Response to Debtor's Amended Objection to Claim No. 43 and Request for a Hearing by Pinellas County Tax Collector (Doc. No. 415 ¶ 4).

[20] 11 U.S.C. § 505(a)(2)(C).

filing the time in which the debtor as debtor in possession could commence an action to determine the proper amount of the Tax Claims under section 505.

The Tax Collector takes the contrary position that when Congress added section 505(a)(2)(C) in 2005 as part of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"), it created an exception to the general provision extending deadlines as set forth in section 108(a). Under this interpretation, the state law deadline would be binding on the bankruptcy court notwithstanding Bankruptcy Code section 108. The result of applying this interpretation in this case is that the time to file a motion under section 505 expired approximately one month after the case was filed. There is little case law or secondary source guidance on the proper interpretation of 505(a)(2)(C) and what there is offers different interpretations.[21]

For the reasons set forth below, it is the Court's conclusion that both section 108(a) and section 505(a)(2)(C) can and should be given effect.[22] The result of giving both of these statutory provisions effect is that the proper interpretation of the new exception to a bankruptcy court's authority to determine ad valorem tax liability would only prevent the bankruptcy court from determining such tax liability when the period to contest such liability had expired before the bankruptcy petition was filed. In cases when the period to contest such liability had not expired as of the date of filing the bankruptcy petition, section 108(a) is still available to extend the time to contest such liability in the bankruptcy court. It should be noted that this conclusion

---

[21] *Compare In re The Village at Oakwell Farms,* 428 B.R. 372, 380 (Bankr. W.D. Tex. 2010) (holding that new section 505(a)(2)(A) requires that the debtor must contest the tax assessment before the time period provided for by state law has expired "notwithstanding section 108(a)"), *with* 14A Mertens Law of Fed. Income Tax'n § 54:2 ("[I]f there is an ad valorem tax which became fixed and the debtor's time to contest it had expired *as of the time of the bankruptcy petition* the debtor may not contest liability in bankruptcy." (emphasis added)).

[22] *Conn. Nat'l. Bank v. Germain,* 503 U.S. 249, 253 (1992) ("Redundancies across statutes are not unusual events in drafting, and so long as there is no 'positive repugnancy' between two laws, . . . a court must give effect to both." (internal citation omitted)).

does not extend to postpetition ad valorem tax claims. Section 108 is only available to extend the period for prepetition claims.[23]

In reaching this conclusion, the Court first notes that section 505(a)(2)(C) as added by BAPCPA is ambiguous. While the new statutory language is clear that a bankruptcy court may not determine ad valorem tax liability where the time to do so "has expired," the statute does not specify at what point in time the expiration of the period should be measured. As discussed in *The Village at Oakwell Farms, Ltd.*, in this respect, the statutory language is subject to various interpretations:

> Should a court find that the phrase refers to the date of the filing of the case by implication? Or should "has expired" be construed to refer to the date when a section 505 action is initiated? Or perhaps to the date when a trial is held? Or when an order is to be entered? None of these alternatives are barred by the language of the statute itself, and each construction has something to commend it.[24]

"A statute is ambiguous if it is susceptible to more than one reasonable interpretation or more than one accepted meaning."[25] And when a statute's phrasing is ambiguous, then a court must necessarily look to other tools of statutory construction.[26] Pertinent to this case, in such circumstances, the court's role in interpreting the statute has been summarized by one of the pioneers of commercial statutory drafting, Karl Llewellyn, as follows:

> [I]f a statute is to make sense, it must be read in the light of some assumed purpose. A statute merely declaring a rule, with no purpose or objective, is nonsense. If a statute is to be merged into a going system of law, moreover, the court must do the merging, and must in so doing take account of the policy of the statute….[27]

---

[23] *Indep. Fire Ins. Co. v. Pender (In re Phillip),* 948 F.2d 985, 987 (5th Cir. 1991); s*ee also N. Specialty Sales, Inc., v. INTV Corp. (In re N. Specialty Sales, Inc.),* 57 B.R. 557, 559 (Bankr. D. Or. 1986); *Waldschmidt v. Metals (In re Ward),* 42 B.R. 946, 950 (Bankr. M.D. Tenn. 1984).

[24] 428 B.R. at 379.

[25] *U.S. v. Valle,* 538 F.3d 341, 345 (5th Cir. 2008) (internal quotation and citation omitted).

[26] *Village at Oakwell Farms*, 428 B.R. at 379.

[27] Karl N. Llewellyn, *Remarks on the Theory of Appellate Decision and the Rules or Canons about How Statutes are to be Construed,* 3 Vand. L. Rev. 395, 400 (1950), *reprinted in* 2A Sutherland Statutory Construction § 48A:8 (7th ed. 2007).

We turn then to the policies underlying the two separate statutory provisions in question, sections 108(a) and 505(a)(2)(C). The policy underlying section 108(a) is fairly straightforward. The purpose of this provision is to give the trustee or debtor in possession time to take any necessary action so that the estate does not lose the benefit of the right to bring an action that would otherwise result under nonbankruptcy limitations periods.[28] Section 108 in such instances affords the trustee (or debtor in possession in a Chapter 11 case) "a longer period of time than the debtor would otherwise have had."[29]

While the policy of section 108 is readily apparent from the text of the provision, the policy with respect to the date by which the expiration of the nonbankruptcy limitation period is to be determined under section 505(a)(2)(C) is not readily apparent from its text. As noted, the statute is ambiguous in this respect. Where statutory language is unclear it is appropriate to turn to turn to statutory history.[30]

Prior to the BAPCPA amendment adding new section 505(a)(2)(C), there was nothing in section 505(a) that expressly prohibited debtors from contesting ad valorem tax claims that arose many years prior to the bankruptcy filing but were not contested or adjudicated prepetition. This was true even when the time for filing an action pursuant to state law contesting the assessment of such taxes had long since passed.[31] In these cases, the local taxing authorities would invariably, albeit unsuccessfully, argue that the court should impose equitable time limitations on

---

[28] 1 *Norton Bankruptcy Law and Procedure* § 16:1, at 16-2 (3rd ed. 2010).

[29] 2 *Collier on Bankruptcy* ¶ 108.01 at 108-3 (15th ed. 2009).

[30] *McLaurin v. Noble Drilling (U.S.) Inc.,* 529 F.3d 285, 288 (5th Cir. 2008).

[31] Carl M. Jenks, *The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005: Summary of Tax Provisions,* 79 Am. Bankr. L.J. 893, 896 (2005).

8

debtors contesting stale property tax claims, but the bankruptcy courts generally were "unreceptive to these arguments."[32]

The case of *In re Piper Aircraft Corporation*[33] is a leading example of a debtor seeking relief under section 505 notwithstanding its failure to timely challenge the assessments under applicable state law. In rejecting the Tax Collector's arguments, the bankruptcy court held that it had "authority to determine the amount of [the] debtor's tax liability, notwithstanding the debtor's failure to comply with state law procedures."[34] *Piper* also involved the sale of the underlying tax obligations to third parties. The court rejected the Tax Collector's arguments that section 505 should not apply when the county had sold the underlying tax obligations to a third party. In this respect, the court held that "section 505 has never included a carve-out, either legal or equitable, for tax liabilities purchased by third parties."[35]

The cases relied upon by *Piper* in support of its holding and those that later followed *Piper* primarily involve a number of tax years for which the debtor's right to seek a redetermination of the assessment had expired long before the filing of the bankruptcy petition.[36] These cases recognize that a review of the assessments long after the period for challenging them under state law had expired could have the effect of undermining the taxing authorities' tax laws and result in chaos in their tax assessment systems because they would be "unable to rely on the

---

[32] *Id.* (citing *Custom Distribution Servs., Inc. v. City of Perth Amboy Tax Assessor (In Re Custom Distribution Servs.),* 216 B.R. 136, 148-49 (Bankr. D.N.J. 1997), *aff'd and rev'd on other grounds,* 224 F.3d 235 (3d Cir. 2000)).

[33] 171 B.R. 415 (Bankr. S.D. Fla. 1994).

[34] *Id.* at 418.

[35] *Id.* at 419 (citing *Gen. Dev. Corp.,* 147 B.R. 610, 612 (Bankr. S.D. Fla. 1992)).

[36] Cases relied upon by *Piper* include *In re Ledgemere Land Corp.,* 135 B.R. 193 (Bankr. D. Mass. 1991); *In re 499 W. Warren Street Assoc., Ltd. P'ship,* 143 B.R. 326 (Bankr. N.D.N.Y. 1992); *In re AWB Assoc., G.P.,* 144 B.R. 270 (Bankr. E.D. Penn. 1992); cases following *Piper* include: *Custom Distribution Servs., supra; Cumberland Farms, Inc., v. Town of Barnstable,* 175 B.R. 138 (Bankr. D. Mass. 1994).

finality of [their] tax assessments."[37] Unfortunately from the perspective of the taxing authorities, remoteness of the tax years did not prevent a bankruptcy court from exercising its discretion to review prior tax years under section 505.[38] Even worse from the taxing authorities' perspective are cases in which section 505 has been used to seek refunds after the taxes have been paid and long after the time for seeking such a refund could have been brought under state law. As stated by one court in considering this issue under prior law,

> [R]ecovery of taxes paid many years before raises havoc with the financial stability of a city or town, particularly a small one. A municipality can take appropriate action to collect unpaid taxes. It obviously cannot spend the money before collection. Once the money is in the coffers, however, it soon goes out.[39]

Simply put, there was nothing in the prior version of section 505 that prohibited debtors from contesting ad valorem tax liabilities "that arose many years ago and with respect to which the debtor had never filed any timely objection."[40] The purpose and effect of new section 505(a)(2)(C), therefore, "is to reverse this result, but only with respect to ad valorem taxes."[41]

And this interpretation of section 505(a)(2)(C) does not render section 505(a)(2)(A) mere surplusage as has been suggested by two recent cases interpreting new section 505(a)(2)(C).[42] In this respect, as discussed above, section 505(a)(2)(A) simply makes clear that when the amount or legality of a tax was contested before and adjudicated by a court of competent jurisdiction

---

[37] *AWB Assoc.,* 144 B.R. at 276.

[38] *Custom Distribution Servs.,* 216 B.R. at 149.

[39] *Cumberland Farms,* 175 B.R. at 142.

[40] Jenks, *supra* note 31, at 896.

[41] *Id. See also Report of the ABA Tax Section Task Force on the Tax Recommendations of the National Bankruptcy Review Commission,* Tax Notes Today, Lexstat 97 TNT 90-22, Comment 306 (May 9, 1997) (The proposed amendment to section 505 "seeks to overrule *In re Piper Aircraft Corp.…* holding a bankruptcy court has authority to determine the amount of the debtor's tax, notwithstanding the debtor's failure to comply with state law administrative procedures.").

[42] *Village at Oakwell Farms, Ltd.*, 428 B.R. at 379; *In re ATA Airlines Inc.,* 2010 WL 3955574 *2 (Bankr. S.D. Ind. Oct. 4, 2010) (slip copy).

before commencement of the case, the debtor in possession or trustee in a bankruptcy case does not get another opportunity to litigate the issue. This court's interpretation of new section 505(a)(2)(C) hardly renders the language of section 505(a)(2)(A) surplusage. Section 505(a)(2)(C) is intended to fill the gap that existed under prior law for situations in which there was no final adjudication of the tax dispute before the filing of the bankruptcy but the time period to file such dispute had expired. Because of the addition of this new provision, debtors in possession and trustees will be barred from reviving expired limitations periods when it comes to adjudicating the estate's liability in tax cases.

## Conclusion

It is this Court's conclusion that there is nothing inconsistent with the application of both section 108(a) and new section 505(a)(2)(C). Given this conclusion, the exceptions to the applicability of section 505(a)(1) to ad valorem taxes should be applied as follows:

1. If prior to the bankruptcy filing the amount or legality of a tax obligation was contested by the debtor and adjudicated by a tribunal of competent jurisdiction, then section 505 would not be available to challenge this final decision.[43]

2. In cases where there has been no prior final adjudication of an ad valorem tax liability, if the applicable nonbankruptcy period for contesting the tax obligation expired prior to the bankruptcy petition, then section 505 is not available to either the trustee or debtor in possession to contest the tax assessment.[44] In this respect, the amendment made by BAPCPA in adding section 505(a)(2)(A) will have achieved its purpose to no longer permit trustees or debtors in possession to go back numerous years and contest tax assessments that are no longer subject to challenge under nonbankruptcy law.

---

[43] 11 U.S.C. § 505(a)(2)(A).

[44] 11 U.S.C. § 505(a)(2)(C).

3. For tax assessments where the applicable period for contesting the ad valorem liability or amount of the assessment has not expired as of the date of the bankruptcy filing, as with other such state law deadlines, section 108 continues to be available to extend the time to bring an appropriate action under section 505 to seek a determination of the proper amount of the taxing authority's claim.

4. For postpetition ad valorem tax claims incurred by the estate, section 108 is not available to the trustee or debtor in possession to extend the applicable period for contesting such taxes as section 108 does not apply to postpetition actions.[45]

Accordingly, for the reasons set forth above, it is

**ORDERED:**

1. The Debtor's request for determination of her ad valorem tax liability was timely filed.

2. By separate order, the Court will schedule a further preliminary hearing for purposes of considering pre-trial matters and scheduling a final evidentiary hearing.

**DONE** and **ORDERED** in Chambers at Tampa, Florida, on January 19, 2011

  Michael G. Williamson
United States Bankruptcy Judge

---

[45] *Phillip,* 948 F.2d at 987.